Brown v. Community High School District No. 155 v. Board of Education of Community High School District No. 155 v. City of Crystal Lake and Leslie Schermerhorn in her official capacity as the McHenry County Regional Superintendent of Schools. On behalf of the Appellant School District, Mr. Robert Swain. On behalf of Leslie Schermerhorn, Superintendent, Ms. Carla Wyckoff. On behalf of the City of Crystal Lake, Mr. Victor G. Philipson, and James. Thank you. First order of business, we do have an open motion. There was a motion to substitute counsel on behalf of the City. Do either of the Appellant's attorneys have an objection? I know the time hasn't passed for a response to that. No objection. Okay. That motion will be granted. With that, Mr. Swain, you may proceed. Thank you. Good morning. My name is Robert Swain. I represent the Board of Education of Community High School District No. 155 serving parts of McHenry and Lake County. We're here today because the Circuit Court of McHenry County ruled in our declaratory judgment action that the City of Crystal Lake has authority to impose its land use ordinances, in particular here zoning provisions and stormwater management, upon property that is used by the school district for school purposes. We think the Circuit Court did it for two reasons. First, there's a lot of cases holding that municipalities that are encompassed by larger regional agencies may not impose their regulatory ordinances so as to restrict the operation of that larger agency. That started with a pair of decisions in the Supreme Court in the 1970s out of the City of Des Plaines concerning a sanitary district that wanted to purchase and develop land for a water treatment facility. It carried on to a decision involving the City of Evanston where the RTA wanted to build a bus barn out of the 1st District. It involves a case out of the 5th District where the Village of Swansea tried to prevent the county from building a dog pound within its borders. It includes a case from the 3rd District where the City of Joliet tried to prevent the state from building a detention facility within the city. Let me ask you, if the school district wanted to build a new school, would they have needed to submit to the zoning ordinance? Under the terms of the ordinance, yes. How is this any different? Than the result of building a new school? I know your position is that public education should be given a priority, but I'm seeing zoning here. I'm not really seeing any educational goal. Tell me how this is different, putting these bleachers up. How does this promote the education of the children? Sure. There's no dispute, I think, from the underlying plaintiffs or from the city and the DECA action that these facilities are actually being used for school purposes. They include, as of the record, things like instruction time during PE class, if PE class is being held outdoors and they actually use these bleachers as actual classroom seating. So if the bleachers were less than 15 feet, would that have impeded their education? In that extent, perhaps not. But if they weren't, then they would have been in compliance with the zoning, correct? As to the one particular provision, yes. So being in compliance with the zoning does not necessarily mean minimizing the educational value of the children? Actually, Judge, they also use those bleachers in, say, PE activity for things like running stairs, so for actual physical activity. They also use them for large gatherings, even co-curricular events, whether they're athletics, whether they're cheer competitions, whether they're track, whether they're football, whether they're soccer. And there's evidence. The fact that they use it for that purpose, does that necessarily take it out of compliance with the zoning regulations? I mean, that would extend to any agency then that uses a facility for their specific purpose, whether it be a police department, a library, etc. There's a long line of cases applying the school purposes test and articulating where exactly the limits are of what does and does not constitute school purposes. Do you have a case that says school purposes exempts schools or school districts from compliance with local zoning regulations? No, that fact pattern has not been decided. Would you agree with this quote, that zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs? Would you agree with that? As to the nature of zoning, I certainly would. And that was City of Aurora v. Burns in 1925, which regulated not just grocery stores, but schools as well. Are you familiar with that case? No, sir, I'm not familiar with the Burns case. We have no dispute, of course, that zoning is a proper function of a municipality. But I think the dispute here arises on two levels. First is this fact that in this particular case, the school district is a larger regional school district serving students from 10 communities, not just Crystal Lake. So you're saying the size of the school should narrow? Yes, that's the bad analysis. I believe it does. Absolutely. That's the analysis coming out of Joliet v. Snyder and out of the Splains cases and out of Empson v. RTA. I think that's absolutely the analysis, yes. So if this was an elementary school that was just in the city limits that only drew kids from the city, then they would absolutely have to comply with zoning? Well, I think the analysis under the Splains line of cases might be different. There would still be the second issue concerning the fact that education is quintessentially a matter of state concern. And under Article 10 of the Constitution, it's been committed to the General Assembly. And as one of our briefs in the City of Peoria decision, the Supreme Court held that when it comes to matters of public education, where the plenary power is positive with the General Assembly, what is required for a municipality to impose burdens upon a public school district is an affirmative grant, an affirmative delegation of authority from the General Assembly to the municipality to do that. And we have, of course, a similar delegation that occurred here. The General Assembly has developed this process and adopted the Health Wise Safety Code, whereby school construction projects are overseen by the regional superintendent. Is a bleacher a matter of public education? I mean, this isn't a city zoning or a city ordinance that says that the graduation age is going to be a certain thing or you have to get such high-grade math to graduate. I mean, the city isn't telling the school district that. They're saying, you know, these bleachers are a problem. Yes, but I think that the General Assembly, I think it's significant to note that the General Assembly has adopted a uniform Health Wise Safety Code to govern school construction throughout the entire state. What's the only statute that talks about zoning in relation to school districts? You're referring to Section 10-22-13-A. Right. Isn't that the only statute that the General Assembly has passed that specifically refers to zoning? I think another, specifically refers to zoning by that name. I think maybe the only statute that uses the term zoning. There's another statute in the school code that specifically says excess property used by school districts and not used or owned by school districts but not used for school purposes is subject to local codes instead of the Health Wise Safety Code. Well, the delegation of authority to schools also says the grant of powers does not release the school board from any duty imposed upon it by this act or any other law. Of course. I think that begs the question. And you're familiar with the Attorney General's opinion on this topic? Of course. And you disagree with her conclusion? I do, Your Honor. I know the Attorney General, in her opinion, did not consider the City of Peoria analysis that we laid out in our briefs, did not consider the Des Plaines lines of cases, which we've laid out in our briefs, and also in applying the Willamette Park District case, failed to account for the treatment that case received in the Edison and Julia cases where the court has held that the Willamette Park District analysis applies by its own terms to a narrow issue involving park districts and that the analysis of how these kind of intergovernmental issues are to be resolved must each be resolved upon their own facts. And when we read the City of Peoria case, which was specifically distinguished in Willamette, and the City of Des Plaines line of cases was specifically distinguished in Willamette, we find, especially from the City of Peoria, the Supreme Court held that rules in terms of how municipalities may regulate schools and parks are different. And the reason is the constitutional underpinning of public schools, that because there's affirmative grant of authority committed to the General Assembly, that the analysis of not whether there is some preemption of municipal authority found in the school code, but whether instead the General Assembly has affirmatively delegated its plenary power to another agency. And we see that, as we point out in our briefs, in several places. Is it clear that the General Assembly has not delegated zoning issues to the schools by virtue of the fact that they make a specific provision that the schools can't apply for the variance? I mean, the Attorney General takes the position that your position renders that language superfluous and unnecessary because you can do what you want carte blanche. I think the Attorney General is mistaken. Because in my position, that provision applies to excess property. Well, wait, one statute that you just cited a minute ago specifically mentioned excess property not used for school purposes. Correct. So you have one statute that specifically mentions that. Then you have this 2213A that just talks about school-owned property and doesn't delineate between the two. But I think it's significant that all of the provisions concerning school construction in Article 2 of the school code, as we've laid out, all speak in terms of use for school purposes, of property used in school buildings. And then in 10-2213A, the standard is not used. The standard is held or controlled by a school district. Do you have any legislative history to support your position? Yes, the provision in 10-2213A was enacted. We're talking about legislative history in terms of comments by members of the General Assembly. As discussed in Stolfo, the court, the Illinois Supreme Court, looked at the history of the regulation. And the state had taken a particular interest in this particular area. However, here we're talking about zoning. Is there a history in the state of Illinois of school districts taking over zoning regulation for purposes of constructing their buildings or rehabbing their buildings? I don't think the issue is school districts taking over zoning. Because school districts don't act unilaterally. We're still subject to the jurisdiction of the regional superintendent who oversees all of the school districts within the county. With respect to zoning? With respect to permitting and approving school construction. And I think it's also significant to note here that if we turn the analysis upon a difference in the label between zoning and building, that all of the provisions the city has tried to label here as zoning, height, size, setback, water control, are all addressed in other ways in the Health, Life, Safety Code. The Health, Life, Safety Code only provides a maximum height for bleachers. It only provides a maximum size for bleachers. It only provides for the regional superintendent. I understand what you're saying. Do those provisions take into consideration the impact on neighbors, the impact on stormwater retention, other traffic flow issues, bleach protection? They take those factors into consideration, consistent with what I said before about Burns v. City of Aurora, that zoning regulations traditionally are local and they must take into consideration a comprehensive view of the entire community, not just what the school thinks is best for the school. I think the regional superintendent absolutely would have considered those things if the City of Crystal Lake had participated in that process, as they are authorized to do and they elected not to. They are authorized to participate in the regional superintendent's review. They are authorized to make comment under the Health, Life, Safety Code, which covers all of their concerns. The regional superintendent would accept that before deciding. So they were invited to and they refused? The onus is upon the City of Crystal Lake to file a request, asking to be notified whenever plans are filed. And they are filed every year. And the City has never filed that request with the regional superintendent. And if the City had, they're limited by statute to commenting on the compliance with the school life code. Correct. I mean, they can't talk about, hey, you're violating our zoning. Well, no, but the Health, Life, Safety Code addresses all of the concerns that are now being raised. It already addresses height. It already addresses size. To the satisfaction of someone who wrote this on behalf of the education side, but not taking into consideration each individual school in the state of Illinois and where it's located. That's true. But when the General Assembly set up that process, one of the rules the General Assembly set up for its process was that the Health, Life, Safety Code must govern that comment. So if this city had participated in the process with the regional superintendent and had raised these concerns, they very well might have been told that the project was permitted within the terms of the Health, Life, Safety Code. I think it's disingenuous for them to now try to achieve a different result by calling it zoning and trying to drag the school district into their own process. So if they had applied for this, or had requested to be notified of the plans, and then they had received notice of the plans, and they had objected and said that this is too high, this is bad for the stormwater runoff, the comment very recently from the school district could be, we're in compliance with the School, Life, Safety Code and have a nice day. Perhaps. So what difference does it make that they have this right to talk about it? Because that decision, in terms of whether to still allow the project to go forward, would be in the hands of the regional superintendent, not the school district or the city. The Health, Life, Safety Code doesn't speak to zoning at all, correct? Not by that name, no. So is there a difference between the zoning code and a building code or building goals in this? There's only one or two cases that try to draw a distinction, but I'm concerned about analysis that really turns upon those labels. Because, as I've said, the very provisions here that are within the Health, Life, Safety Code have also been categorized by the city now as zoning. We're going to be out of reserve for two minutes for the regional superintendent. Do you have a question? I don't have a question. Do you have a question? Actually, I'm willing to stand on my roof if you can see my two minutes to Mr. Stoner. You're always welcome to do that. Are there any inclusions of zoning in the school code? Any inclusions of zoning? There's nothing in the school code that requires schools to comply with zoning. There's only the one enabling statute that empowers them to go through zoning. It specifically provides for them to seek a variance, which— Correct. We do not lack the authority to seek that relief. Absolutely true. We do not lack that. But I think under the display and design of cases and under the city of Peoria rationale, the city cannot impose those requirements unilaterally. That is our position. But the legislature could. Absolutely. Absolutely. And so you're seeing 2213A as a right and not a duty. That's how it's characterized in the school code. It's characterized as a power, not as a duty. Section 10-20 says that this is a power, not a duty. And you're not—you are not arguing that compliance with the zoning regulations would frustrate or would significantly frustrate the purposes of public education in Crystal Lake? On the current record, not yet. I think that issue— You don't make that point in your brief. You're not arguing that the zoning regulations impose an unconstitutional infringement on the school's authority to educate. Correct? You're not making that argument. That issue is currently before the trial court on summary judgment. That is not in our declaratory judgment action on our 304A appeal. Now you're saying 10-20 is under the heading powers of school boards. And there's a laundry list of things underneath 10-20. And 22-13A is one of them. Are you saying all of them are all powers and there's no duties in there at all? There are duties under section 10-19. Okay, but under 20 there are no duties. Everything under there is a power, not a duty. 10-20 characterizes them as powers. You state—let me understand your syllogism. Your first proposition is the Constitution and various authorities declare that public education is a statewide concern. The second proposition is that the legislature has given them—has the plenary power over education. Your conclusion, then, is the city cannot enforce its zoning provisions over the district property used for school purposes. Correct? In the absence of a legislative— Is that a clear characterization? Yes, in the absence of a legislative— But the first two propositions involve state-level governmental units. Your conclusion is local. Correct? The conclusion is local. The conclusion is local to—well, it would be the same conclusion statewide, though. I mean, sure, a school district, by definition, is local. But it is that same conclusion as to the regional superintendent serving Elementary County and to this school district serving these 10 communities. So, yes, it's local in that sense. All right, thank you, Counsel. Thank you. The appellants will have time for rebuttal argument. Mr. Filippini, you may proceed. May it please the Court, Victor Filippini on behalf of the City of Crystal Lake. The District 155 argument that began this morning, namely that local zoning cannot impact regional governments, is an interesting theory, but it has absolutely nothing to do with this case. The reason why I say that is this. The regional government issue is one that they addressed specifically in their brief. And I have to tell you, there's not many things that I agreed with in their briefs, but at the top of page 13 of their opening brief, they said the school district, or the school code, establishes a three-tiered system to oversee and operate public schools throughout the state. The first tier beneath the General Assembly is the State Board of Education. Consistent with the State Board's own constitutional mandate, the General Assembly has declared... Oh, let me truncate this. They identify the State Board, they identify the regional superintendent, and then they say, on a local level, the General Assembly has created school districts to be governed by the Board of Education. That I agree with. There is a series of local governments involving schools, and they are the school districts. They are not regional forms of government. And the notion that District 155 apparently has is that if a governmental body has boundaries that cross over the boundaries of more than one other government, it's suddenly regional. In that case, the city of Crystal Lake, which has four different school districts within its borders, is also regional. But that's not the standard. What the standard is, if you look at the yardstick that is used in the cases that were cited in their brief, the standard relates to the function of the body and how it interacts with other governmental bodies. Let me ask you briefly. Counsel had said that there was an opportunity for the village for Crystal Lake to come in and participate and take a look at what was going on at the school, and they kind of neglected to do so. Judge, I think that that's a matter of building versus zoning. Counsel tried to obscure that distinction. What's the difference? How is the distinction in your mind? I think you can get very granular about it, but to try to take it in more general terms, building codes look internal. What is the building requirement? How high must the risers be on stairs? If you look at the statute, it even says it's talking about heating systems, toilets, and things of that nature. Zoning looks at the interaction of one property to others. It's environmental in its look. And you can go back to the City of Euclid case, which the Smith case was cited in, where the Supreme Court of the United States said zoning is really to look at how uses are interacting within the environment. And that's the difference between zoning and building. If he participated early on, would you not have had a heads-up as to what was going on with, in your opinion, zoning, when they made their bill, what they thought was a building plan? Whether we participated in that or not, the regional superintendent's jurisdiction is determining whether or not something complies with the life safety code for schools. And that is silent as to the zoning issues, which are relegated to municipalities. Your argument is that they're compatible. One does not exclude the other. Absolutely. Absolutely compatible. Absolutely, Justice. In fact, if you look at how the General Assembly looks at it, this isn't me. This is the General Assembly. The General Assembly authorizes specific authority for municipalities with respect to zoning. That's in Division 11.13 of the Municipal Code. And specific authority for municipalities with respect to building. And that's in 11.30, 31, and 31.1. The General Assembly makes that distinction. It's important to note that this Court, in fact, has previously rejected efforts on the part of schools to try to bootstrap the life safety code in a manner to avoid other kinds of regulations. The Davis v. Winnebago County case in which the school cafeteria superintendent attempted to avoid the health department regulations by saying, oh, we're covered by the school life safety code. The Court said, no, you're not. That's a building regulation. That's not a health and sanitation issue with respect to things such as food service. Likewise, the distinction between zoning, which the General Assembly makes very clear in its statutory structures, and building is a real one. And all of the words that District 155 wants to present are not going to change that clear distinction. I would note a few other things with respect to the overall structure. And I believe the Justices have already identified some of these. But when we are looking at schools, and District 155, in their briefs, made much of the fact that school is a matter of statewide concern. It's actually education. And it's actually, if you look closely at the language in Article 10, it's talking about educational programming and finance. It doesn't talk about pencils and bleachers. Where some school might buy its pencils is not a matter of statewide concern. What it does say, however, is that the General Assembly has plenary power. Let's think about what that means. I don't think it means what District 155 suggests. It means that the General Assembly can do whatever it wants in terms of organizing this. And how do you understand what the General Assembly wants? You look at the Illinois compiled statutes. Frankly, if you look at the Illinois Municipal Code and the long history, say, for home rule, the long history in Illinois, which said municipalities have no power other than what is delegated to it by the state under Dillon's rule, that, too, shows that the General Assembly has plenary power over those matters that municipalities can act. And so you look at the statute. And you don't just look at the school code. You don't just look at the municipal code. You look at the codes generally. And when interpreting statutes, what must the courts do? The courts are supposed to try to reconcile the statutes to give full effect to each of the provisions. If we do that, let's take a look at some of the key provisions in the school code and the municipal code that apply here. Section 10-20 of the school code, at the end, when it talks about the grants of power, it says this grant does not release a school from the duty imposed upon it by the state or any other law. Is 2213A a power of the school board, that they have the power to go seek zoning variances if they choose to do so? It certainly is a power. And I think in combination with 10-20, it reveals much as to what the duty is. There was some question as to whether or not a school could, in fact, apply for zoning. And if it couldn't apply for zoning, then it would be hamstrung in terms of trying to do something that may not conform fully with the requirements of a local zoning code. Your argument is that the city, the village, has the authority under the municipal code to set setbacks, height of buildings, et cetera, and there's no provision, there's no like provision in the school code. That's correct. The authority is completely in the municipality. Right. The only reference in the life safety code to height has to do with the height of fences, and that's a maximum. That's not saying what the minimum is. That doesn't mean that you always can go to the minimum. It goes to, as you said before, that goes to the environment that the student is in during their educational experience. Correct. And, again, when you look at a school, and Mr. Swain at one point indicated that, well, there might be a lot of different uses for a school. Well, if a school decides that, for driver's ed, it wants to have a NASCAR-style racetrack, that, let's assume, might be within the realm of a school district, but that doesn't mean it's not going to have impacts, and that doesn't mean it shouldn't be governed by zoning. And it's important to note, we're not talking about an outcome here. We're talking about a process, a process that the Illinois Supreme Court has already reviewed and endorsed. And, again, getting back to those cases regarding regional governments, the Metropolitan Sanitary District, now the MWRE, that's a body that is regional in terms of its geographic scope, but it also is regional in terms of how it interacts with other governmental bodies. It accepts sewage from local municipalities. It transports that sewage, and it treats it, and it does it not just for one, but for many. And the reason why the court said it's important not to have local zoning try to trip that up is because, you know, it's sort of a precursor to NIMBY. It wasn't the acronym back then, but it effectively was. When you have something that has regional impact that affects multiple municipalities in a direct way, you can't have one of those municipalities with the veto power because of the consequence of zoning. But the goal of education is to provide for an efficient system of high-quality public education. That's correct, Your Honor. Does this limiting the school district, limiting these bleachers, moving them further from the home, making them smaller,  Well, I would say no, not one iota. I would say that the record wasn't fully developed as to what the impact of that is or is not on a school, but common experience tells me that that doesn't make one iota difference in terms of one education. I would further submit that if it did, by following the dictates of the Willamette Park District case, we avoid an adverse impact on education because if, in fact, that got to the essence of what the district's mission is and if it disrupted that mission under Willamette Park District, that would be a way of saying, notwithstanding the local zoning, you're impairing the school district's essential mission and you can't do that. That's what the teaching of the Willamette Park District case is. So a city can't zone out schools? I don't believe that a city could. Well, a city could, but if it were challenged, my guess is that you all would say, sorry, you can't. If there was no other place to build and the city was trying to exclude new construction of schools, that would clearly frustrate the purpose of the case. I believe that's correct, Judge, and I think that's, Justice, and that's why the Willamette Park District case emphasized the importance of having a process so that you could ultimately resolve that and hopefully resolve that in a manner that will result in a better outcome than simply having one governmental body make a decision in a vacuum without consideration to the other issues that are not even on its plate. That's basically what the amicus brief talks about, the public policy. Yes, and, Judge, Justice, I think that the policy issues are really quite concerning here because if you think about it, while the school district focused on Article 10 of the Constitution and tried to say that this is the be-all and end-all of this case, let's look at those policy considerations in light of our Constitution. One of the things that the amicus brief pointed out is that by following the teachings of Willamette Park District and having the school districts go through local zoning, it fosters intergovernmental cooperation. Well, that happens to be set up in Article 7, Section 10 of the Constitution. It's one of our constitutional principles to encourage that. It talks about rational decision-making and trying to do so in a democratic process, and that happens to be showing up right in the preamble of our Constitution where we are to provide for the health, safety, and welfare of the people and maintain a representative and orderly government. So we're actually fostering constitutional principles. And then the third point that the amicus brief raised, to which we fully subscribe to this view, is that it minimizes litigation and will narrow issues. And frankly, that is one of the longstanding rules of Illinois and American jurisprudence that you don't bring a case until it's right. You have to exhaust administrative remedies. The reason is you want to have a concrete dispute when it comes before a court. You want to try to minimize the need for the judicial intervention by having local means to resolve disputes before it has to come to the courts. Well, wouldn't that have been—doesn't that bring us back to your reaching out to the schools and being cooperative and being a part of the changes that they want to make? With respect to, what is it, the— The Regional Superintendent's Review. Yeah, and the Health, Life, Safety, and the Regional Superintendent's Plan. Well, Justice, I would take a slightly different view of that. I think that the city fully respecting the Life Safety Code and not having any realm—any control within the realm of building wasn't going to try to interfere with that. That was not— Well, would it have been interfering or would it have been cooperating? Well, I— You're subscribing to the amicus brief and saying, well, yes, it's in the best interest that we work together, that we avoid litigation. If you had taken a step in that direction, perhaps now or in the future you might avoid litigation. Well, I believe, Justice, that given that process, which is to review whether or not something complies with the Life Safety Code, there's nothing that could have been done. The Regional Superintendent lacked jurisdiction to consider the very issues that are governed by zoning. Okay, so you're not going to say, then, if you were at the table, things may have changed. I don't think that they would have changed. At least there would have been no legal authority. That might have provoked a discussion, but it wouldn't have been a discussion provoked within the context of what the General Assembly has established for undertaking zoning reviews. It wouldn't involve some of the due process considerations. And as Your Honors are well aware, when the Supreme Court considered the Claren case and the General Assembly then had follow-up legislation, the one point, although the General Assembly did much to change the outcome of Claren in terms of process, the one point that the General Assembly emphasized out of the Claren decision is that the due process elements of zoning are to be preserved. And that is something that has been entirely undermined by the school district's avoidance of the local zoning process. And again, when we get back to what is a rational decision process, it's the give and take. It's the contribution of people. Nobody has a complete understanding and appreciation for all facets, all impacts. And those impacts are going to be resolved more easily in a public hearing process. I want to make sure I understand your attempt to distinguish displays and not to certainly equate students with sewage, but you are bringing students in from a number of different places, not just the city involved here, and then sending them back to their communities. You have a school life code that has to be, the plans have to be approved, not by a local board, but by the regional superintendent of schools. Why is this not a regional endeavor? With respect to the construction of a school building, that is a statewide concern. That is a statewide code, and it applies statewide. It's administered at the regional superintendent level, and it's abided by at the local school district level, but that is a statewide concern. The distinction among the cases that the school district is trying to rely on is that this is a school district. It has one constituency. It may overlap various boundaries of other governmental bodies, but so too does the cities. What characterizes a regional body is that the RTA is a great example in the RTA versus Edison case. That body is comprised of representative of governmental bodies within the six county areas. That is the archetypal regional government. The State Department of Corrections, that is a statewide body. The Metropolitan Sanitary District, that is a regional body because it serves multiple municipalities within its corporate limits. There's only one constituency that the school district serves, and that is its school residents. The fact that they may have some that, if you go to a Venn diagram, municipalities and school districts both have union and intersections, but what is characteristic of a regional body is that its universe is comprised of a bunch of subunits of government that are subject to it and that is the distinguishing characteristic among those cases and the one we face here. All right. Thank you, Mr. Phil. Thank you very much. Mr. Swain, rebuttal argument? As far as rebuttal goes, was Ms. Wycock going to, do you want to save any time? No, no. Thank you. Thank you. I'd like to follow up on a couple points that counsel raised here. First is the operation of state regional agencies. I think the amicus, Professor Reynolds, lays out some of that analysis in her article, which she cited in her amicus brief, but then we actually cited back. Part of her analysis was from a political accountability perspective, the smaller jurisdiction does not answer to the full constituency of the larger jurisdiction, and that's exactly what's going on here. The city of Crystal Lake has no reason to be concerned for students from Cary or Fox River Grove. How does the zoning regulation in Crystal Lake affect the educational or quality of education of the kids from Cary or Fox River Grove? There are students from outside Crystal Lake. I think about seven of the ten communities attend this particular high school. And I think the important fact here, rather than get hung on the fact that they're bleachers, I'm not here to say, I'm not the one positing that bleachers are important in the educational process. What I am saying is the General Assembly decided to adopt a Health Life Safety Code, which already covers these specific provisions for bleachers. It does not cover zoning issues as to where those bleachers are constructed. It does actually cover proximity to nearby buildings. It does cover height. It does cover size. It does cover flood water and storm water control. It does. And the city of Crystal Lake is trying to achieve a different result by simply putting a different label on it. And I think their analysis is backwards. Because under city of Peoria, which was established in Willamette Park District, the analysis to schools is not whether there's been some preemption of an underlying municipal authority, but whether the General Assembly has affirmatively delegated authority. If the General Assembly had affirmatively delegated just zoning or just building authority to municipalities, then that distinction might make a difference. They have delegated neither. So the distinction makes no difference here. In the West Chicago case, for example, this court looked at a local municipal building code and decided it could not apply, of course, in the face of the Health Life Safety Code. The city of Crystal Lake here is trying to achieve just the same result by calling their provisions zoning instead of a building code. But isn't one dealing with constitutionality or a constitutional right and the other dealing with a statutory right? I'm not quite sure I follow your question. I'm sorry. The municipality is their constitution. It's given these powers via the Constitution. And you're talking more statutory with the school code. Well, sure. But the school power starts with the Constitution. The Constitution is given to the General Assembly in the first instance. But the goal in that is it's going to provide for an efficient system of high-quality public education, a public educational institution and services. And as Justice Burkett said, would the compliance here frustrate the school's ability to provide for that public education? Yes, I believe it would. And I can tell you, the General Assembly saw fit to adopt a uniform health-life safety code that applies throughout the entire state except in Chicago. They've not even seen fit to adopt a uniform curriculum throughout the state. That's the level of importance that the General Assembly placed upon its health-life safety code. And there's no dispute that the city's zoning curriculum belongs to the regional school boards, to the local school boards. Yes, by decision of the General Assembly, yes. Just as traditional police powers, by under the municipal code, zoning, setback, height of structures belongs to the municipalities. Would you agree with that? Yes, as a general principle, yes, absolutely. But you're saying that the interest in public education trumps the police powers of the municipalities. That's your argument, essentially, correct? Yes, essentially. I'm saying the General Assembly made that determination. Where is it? By enacting a dedicated health-life safety code with a process through the regional superintendent and deciding not to delegate any authority to municipalities except so far as it might cooperate in that process, which the city decided not to do. So that was the specific limitation on the home rule power. I mean, the Constitution says home rule power is a general unless specifically limited by the legislature. Yes, actually. The school code does not have a single specific limitation upon home rule power. The limitation here is that public education falls outside of local government affairs, and that is the inherent limit of home rule power under Section 6A of Article 7. So there's no specific preemption for home rule power anywhere in the school code, not a single one. So I think it brings me back to the very first question I asked you when we came out of BOTS. If the school district wanted to build a brand-new school, then why would, according to your argument, why would they have to comply with any zoning rules there if, the way you're arguing it, based upon the statutory authority given, they don't have to comply with anything else? They would not have to comply with zoning amendments. They would have to comply with the regional superintendent's process. When this building, when the school was first built, was there compliance with the local zoning regulations? I believe it was annexed into the city having been built. Were there special uses or variances given after the fact? I believe there may have been a revision to the annexation agreement which established the original zoning over the property. I would like to thank the attorneys for their arguments today and in case you would like to make an advisement, please show your assistance.